NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO MANZO, | |
| Petitioner, | Civil Action No. 08-454 (PGS) |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Respondent | |

**SHERIDAN, U.S.D.J.**

Petitioner, Antonio Manzo, brings a motion for habeas corpus pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds of ineffective assistance of counsel. The Government, in response, states that Manzo waived his right to petition this court pursuant to § 2255 in his plea agreement, and that even if no such waiver had been made, Manzo cannot show that his counsel's assistance was ineffective or prejudiced him in any way.

For the reasons that follow, Manzo's motion is denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts of the underlying conviction are not in dispute. On August 22, 2004, Petitioner, Antonio Manzo, and his brother, Victor Manzo, ("the Manzo brothers"), were caught with fifty-five kilograms of cocaine which they had transported from Illinois to Mount Laurel, New Jersey.

1

The Government knew of their participation in this crime in advance of their arrival in Mount Laurel due to an authorized wire-tap investigation which was being conducted by the New York Drug Enforcement Task Force, ("NYDEA"). The NYDEA agreed to release the Manzo brothers after their arrest on the condition that each promised to cooperate in the ongoing investigation.

At some point after the August 22 arrest, either the Manzo brothers reneged on their agreement to stay in touch with NYDEA, or the NYDEA failed to follow-up in securing information from the Manzo brothers. In any event, communication between the parties ceased. On October 13, 2005, the Manzo brothers were again arrested by the New York authorities on the basis of arrest warrants issued out of the Southern District of New York. By this time, indictments had been returned against the Manzo brothers in the Southern District of New York for conspiracy to distribute cocaine, 21 U.S.C. § 846.

The Manzo brothers filed successful motions requesting a change of venue to the District of New Jersey, and the case was transferred to this Court. There, each defendant was offered a disposition which entailed each pleading to two counts of knowingly and intentionally using a communication facility, namely a telephone, to commit and cause and facilitate the commission of an act constituting a felony, namely, possession with intent to distribute five kilograms or more of cocaine. Each brother accepted the plea agreement offered to him by the Government. On May 30, 2007, the Manzo brothers separately pled before this Court to a Superseding Information. Specifically, Antonio Manzo's plea agreement included several provisions that would affect his right to petition the District Court for a reduction in his sentence. In exchange for the promise by the Government that it would advance the argument before this Court that Antonio Manzo was a minor participant in the alleged criminal activity, and its mutual agreement

2

with defendant "not to argue for any upward or downward departure or any upward or downward adjustment not set forth" in the agreement, defendant specifically agreed that as long as this Court sentenced the defendant within Guidelines offense level 25, he would not challenge the sentence.[1] (See Resp. Answer at 3.)

Prior to the sentencing hearing, the United States Probation Office issued its Presentence Report and calculated the defendant's Guideline offense level at 35. Probation further determined that Antonio Manzo had a criminal history category of III, yielding a suggested guideline range for imprisonment of 210 to 262 months. At sentencing on November 1, 2007, the Court sentenced Antonio Manzo to 37 months imprisonment on each of the two counts of the Superseding Information, to run consecutively, along with a period of post-release supervision, fines, and assessments. The 74 month sentence is within the guideline range of 70-87 months applicable to an offense level of 25.

Thereafter, on January 23, 2008, Antonio Manzo filed this 28 U.S.C. § 2255 motion seeking a reduction of his sentence based upon ineffective assistance of counsel. Defendant did not file an appeal or certiorari petition.

## DISCUSSION

In his petition, Manzo essentially advances two arguments. First, Manzo states that his attorney was generally ineffective because he "rendered ineffective assistance of counsel [in] all stages of [the] proceeding." Secondly, Manzo argues that his attorney was ineffective because the attorney failed to seek a downward departure on Manzo's behalf based on the fact that Manzo

---

[1] The parties do not seem to dispute that a Guideline Offense Level of 25 would yield a suggested sentence of 70 to 87 months of imprisonment.

3

is a deportable alien. Manzo argues that his alien status will likely cause an undue increase in the severity of the sentence imposed and that, consequently, a downward departure should have been granted to him. Thus, the failure of his attorney to argue for such a departure constituted ineffective assistance of counsel under the Sixth Amendment.

In response, the Government asserts that in his plea agreement, Manzo waived his right to appeal or to seek modification of his sentence under § 2255, and this his petition is therefore improperly before this Court. Further, the Government argues that, in any event, Manzo's counsel was not ineffective within the meaning of *Strickland*[2] because he managed to secure a vastly reduced charge and sentence for Manzo.

As will be shown, both of petitioner's arguments are without merit, and his petition to vacate or modify his sentence will be denied.

## I. ARGUMENT THAT COUNSEL WAS GENERALLY INEFFECTIVE

In his petition, Manzo states that his counsel "rendered ineffective assistance . . . [in] all stages of [the] proceeding." Although Manzo did agree to waive his right to appeal or seek modification of his sentence under § 2255 pursuant to his plea agreement, because of the allegation of general ineffectiveness of the attorney who represented him during plea negotiations, this Court will examine the allegations on their merits.

In order to succeed in an ineffective assistance of counsel argument, Defendant must meet both prongs of the test articulated in *Strickland*, 466 U.S. at 687. The defendant must first demonstrate that his attorney's performance was somehow deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

---

[2] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

defendant by the Sixth Amendment." *Id.* More specifically, "[a] constitutionally deficient performance is one that falls 'outside the wide range of professionally competent assistance.'" *Arroyo-Angulo v. United States*, 961 F. Supp. 698, 700-01 (D.N.J. 1997) (quoting *Strickland*, 466 U.S. at 690). The defendant must next show that he or she was prejudiced by that deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding], . . . whose result is reliable." *Strickland*, 466 U.S. at 687. "Prejudice from deficient performance is shown where: 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Arroyo-Angulo v. United States*, 961 F. Supp. at 701 (quoting *Strickland*, 466 U.S. at 694). "The burden of proof rests with the petitioner"to satisfy both prongs of this test. *Id.* (citing *McNeil v. Cuyler*, 782 F.2d 443, 448 (3d Cir.), *cert. denied*, 479 U.S. 1010 (1986)). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. This test applies both to convictions after trial as well as to convictions based upon guilty pleas entered by defendants. *Id.* (stating that "a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases'").

The *Strickland* Court further recognized that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 4664 U.S. at 688-89. Finally, the Court stated that there was "a strong presumption that counsel's conduct falls within the wide range of reasonable professional

5

assistance," thus requiring a high level of deference in evaluating the performance of counsel. *Id.*

Here, defendant first claims that his counsel was generally ineffective throughout his case. From the facts presented, it does not appear that Manzo's attorney was generally ineffective in the sense of failing to provide "reasonable professional assistance" to Manzo. After the transfer of venue, Manzo's attorney brokered a plea agreement with the Government that resulted in a 10-level reduction in Manzo's Guideline Offense. Without more specific allegations as to Manzo's attorney having "rendered ineffective assistance of counsel [in] all stage[s] of [the] proceeding," this Court cannot say that such performance rises to the level of professional error required to satisfy the first prong of *Strickland*.

Further, even if the generalized statements could somehow be construed to rise to the requisite level of error, it cannot be said that Manzo was prejudiced by any failing on the part of his attorney such that he was deprived of a fair opportunity to defend himself. Petitioner received a far lesser sentence than the one calculated for him by the Probation office, and he was allowed to plead to a telephone conspiracy charge as opposed to the original charge of conspiracy to distribute cocaine. Thus, Manzo has failed to prove the second prong of *Strickland,* and the first point of his motion is without merit.

## II. ARGUMENT THAT COUNSEL WAS INEFFECTIVE AT SENTENCING

Manzo next claims that the failure of his attorney to request a further downward departure in his sentence based upon his deportable alien status constituted ineffective assistance of counsel within the meaning of *Strickland*. For the reasons that follow, this argument likewise fails.

Manzo argues that under *United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994), he is

6

entitled to a downward departure. *Smith*, which is not binding on this Court, and which was decided before *United States v. Booker*, 543 U.S. 220 (2005), implicated the denial of a downward departure under the then-existing mandatory sentencing guidelines. In *Smith*, the D.C. Circuit Court of Appeals held that, in certain instances, the severity of confinement based upon an inmate's status as a deportable alien may be justified. *Smith*, 27 F.3d at 655. The rarity of such circumstances was noted by that court due in large part to the discretionary authority granted to the Bureau of Prisons by Congress. *Id.* In that case, the Court of Appeals noted that "[t]he range of factors that the Bureau may consider in its assignments is almost illimitable . . . and it may be hard for a sentencing court to say whether the fortuity of being a deportable alien is likely to have any independent effect." *Id.* (internal citations omitted). The *Smith* court likewise noted that it "did not mean to suggest that a departure is in order whenever a factor unrelated to a prisoner's just deserts may affect the severity of his confinement." *Id.* Rather, the appellate court indicated that in order for such a departure to be considered reasonable, "the difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence." The court further opined that "as the defendant's status as a deportable alien is by no means necessarily unrelated to his just deserts, even a court confident that the status will lead to worse conditions should depart *only when persuaded that the greater severity is undeserved.*" *Id.* (emphasis added). Therefore, it is fairly clear from the *Smith* decision that an inmate's status as a deportable alien is but one factor in a host of others that may, but not must, be considered by a sentencing court in passing its judgment on a defendant.

A search of the case law has not revealed any published case wherein the Third Circuit

7

has ruled specifically on this issue. However, the District of New Jersey has addressed this issue in the cases of *Arroyo-Angulo v. United States*, 961 F. Supp. 698, 702 (D.N.J. 1997). In *Arroyo-Angulo*, which involved a § 2255 petition based upon ineffective assistance of counsel, petitioner argued that his attorney's failure to request a downward departure based upon his status as a deportable alien constituted ineffective assistance. That court disagreed, citing *Smith*, stating "counsel's failure to argue for a downward departure . . . was within the bounds of reasonable effective assistance. The argument for a downward departure . . . was tenuous at best, and petitioner would not have prevailed." *Arroyo-Angulo*, 961 F. Supp. at 702. *See also United States v. de la Luz Angel-Martinez*, 988 F. Supp. 475 (D.N.J. 1997) (denying a motion for a downward departure based upon defendant's alien status).

Here, petitioner's argument that his attorney was ineffective for failing to request a downward departure on the basis of his deportable alien status is likewise without merit. Based upon the attendant circumstances, the attorney's choice not to make such a motion was within the bounds of reasonable professional assistance, and such an argument would not have prevailed at sentencing.

For these reasons, petitioner's second argument fails, and his motion is denied.

## CONCLUSION

For the foregoing reasons, petitioner's motion to vacate or correct his sentence pursuant to 18 U.S.C. § 2255 is denied.

July 30, 2009

_____
PETER G. SHERIDAN, U.S.D.J.

8